IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAMELA IVIE,

     Plaintiff,

vs.                                         Civ. No. 12-697 JP/RHS

EXTERRAN ENERGY SOLUTIONS, L.P., a Texas corporation;
JASON INGERSOLL, in his official capacity;
COLLEEN STEWART, in her official capacity;
TOBEY COCKRELL, in his official capacity;
BRAD REMLEY, in his official capacity;

     Defendants.

MEMORANDUM OPINION AND ORDER

On June 27, 2012, Defendants removed this case from the Eleventh Judicial District

Court, County of San Juan, State of New Mexico.  NOTICE OF REMOVAL (Doc. No. 1).  On

November 3, 2012, Plaintiff filed a SECOND AMENDED COMPLAINT OF SEX

DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,

AND IN VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT AND

RETALIATION (Doc. No. 26) (Second Amended Complaint).  Defendants Exterran Energy

Solutions, L.P. (Exterran), Jason Ingersoll, Tobey Cockrell, and Brad Remley now move for

summary judgment on all of Plaintiff's claims in her Second Amended Complaint.  *See*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 47) (Motion for

Summary Judgment), filed May 16, 2013.  If these Defendants prevail on their Motion for

Summary Judgment, they also seek an award of attorneys' fees and costs. Plaintiff partially

opposes the Motion for Summary Judgment.  *See* PLAINTIFF'S RESPONSE TO MOTION

FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Doc. No. 50)

(Response), filed June 20, 2013.[1]  Exterran, Ingersoll, Cockrell, and Remley filed a reply brief on July 2, 2013.  *See* DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Doc. No. 53) (Reply).

On June 24, 2013, Exterran, Ingersoll, Cockrell, and Remley also filed a MOTION TO VACATE TRIAL SETTING (Doc. No. 51).  Plaintiff opposes that motion.  *See* RESPONSE IN OPPOSITION TO MOTION TO VACATE TRIAL SETTING (Doc. No. 52), filed July 1, 2013. Exterran, Ingersoll, Cockrell, and Remley filed a reply brief in support of their MOTION TO VACATE TRIAL SETTING.  *See* REPLY IN SUPPORT OF MOTION TO VACATE TRIAL SETTING (Doc. No. 54), filed July 8, 2013.

As a preliminary matter, the Court notes that Plaintiff agrees to dismiss her claims against Cockrell and Remley.  The Court further notes that Defendant Colleen Stewart did not join in the Motion for Summary Judgment or in he MOTION TO VACATE TRIAL SETTING because she has not been served with the Second Amended Complaint.  The Court would typically order Plaintiff to show cause why Plaintiff's claims against Stewart should not be dismissed for failure to comply with Fed. R. Civ. P. 4(m) (timely service of complaint and summons). *See Thompson v. Galetka*, 42 Fed. Appx. 397, 399 (10th Cir. 2002), *cert. denied*, 537 U.S. 1115 (2003) (citing *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995) (district court has discretion to dismiss complaint for improper and untimely service of process).  However, because Stewart is named in claims which the Court will either dismiss or remand to state court, the Court sees no need to issue an order to show cause.  Instead, the Court will include Stewart in its discussion of

---

[1] Plaintiff filed this Response in accordance with the Honorable United States Magistrate Judge Robert H. Scott's ORDER GRANTING MOTION TO EXTEND DISCOVERY PERIOD (Doc. No. 48), filed May 28, 2013.

the Motion for Summary Judgment and the MOTION TO VACATE TRIAL SETTING.  Any

reference to "Defendants" will include only Exterran, Ingersoll, and Stewart.

A.  *Background*

    1.  *The Second Amended Complaint*

        This employment termination case arises from Defendants' determination that there was

reasonable cause or suspicion that Plaintiff violated Exterran's Substance Abuse-Non-DOT

Policy Number 109 (published Sept. 28, 2010) (Substance Abuse Policy) by tampering with drug

tests and by failing on March 3, 2011 to complete a reasonable cause or suspicion drug test.

Plaintiff is now suing her employer, Exterran; Exterran regional manager Ingersoll in his official

capacity; and Exterran human resources representative Stewart in her official capacity.  Plaintiff

brings the following Counts in the Second Amended Complaint:  (1) Count I consists of Title VII

of the Civil Rights Act of 1964 (Title VII) claims of sex discrimination against all of Defendants;

(2) Count II consists of Title VII claims of retaliation against Exterran and Stewart; (3)  Count III

consists of New Mexico Human Rights Act (NMHRA) claims against all Defendants for sex

discrimination; (4)  Count IV consists of NMHRA claims of retaliation against Exterran and

Stewart; and (5) Count V consists of breach of contract claims against all Defendants.

    2.  *Summary of the Facts*[2]

        *a. Relevant Facts Leading up to Plaintiff's Termination of Employment*

        Plaintiff worked at Exterran in an administrative capacity and was, therefore, classified as

a non-Department of Transportation (DOT) employee.[3]  As a non-DOT employee, Plaintiff was

subject to Exterran's zero drug tolerance policies as a condition of employment. Exterran applies

---

[2] This Summary of the Facts is comprised of undisputed facts unless otherwise noted.

[3] A "non-DOT" employee does not operate vehicles.

a reasonable cause or suspicion policy when an employee is suspected of drug test tampering.

Reasonable cause or suspicion, in that context, is defined in Substance Abuse Policy § 6.0 as

[t]he Company's belief that a Covered Individual is using or has used drugs or alcohol in violation of the Company's written policy based on specific objective and articulable facts and reasonable inferences drawn from those facts, in light of experience, and may be based upon, among other things: … (c) information that Covered Individual has tampered with a drug or alcohol test during his or her employment or working relationship with the Company….

Ex. 6 (Doc. No. 47-6) at 4.  According to Substance Abuse Policy § 10.2, two supervisors or managers must agree on a reasonable cause or suspicion determination, but it is not necessary for those "two supervisors/managers [to] observe the behavior of the Covered Individual, only that both agree that reasonable cause exists."  The Substance Abuse Policy further states that "[i]f the Company has Reasonable Cause or Suspicion to believe that a Covered Individual has engaged in conduct prohibited by this policy, the Company may require the Covered Individual to submit to a Drug and/or Alcohol test." *Id*.  Substance Abuse Policy § 7.0 specifically prohibits employees from refusing to submit to a drug test.  Employees who have been found to have violated the Substance Abuse Policy are subject to disciplinary action including "immediate termination of employment."  Substance Abuse Policy § 14.0.

On February 12, 2011, Plaintiff and her husband hosted a party at their home for an Exterran employee, David Sebree, who was transferring to another office.  This was not an Exterran sponsored event although several Exterran employees attended the party including two female non-managers who stayed at the party for about 30 minutes and seven male managers.

Carrie Culler, the wife of an Exterran employee and an attendee at Plaintiff's February 12, 2011 party, called Brenna Reddy, an Exterran human resources employee, sometime after Plaintiff's party regarding concerns she had about that party.  Reddy advised Ms. Culler that there were several options for voicing her concerns including sending an anonymous letter.  On

4

February 28, 2011, Reddy received, by mail, an anonymous letter written by Ms. Culler regarding Plaintiff's party.  Ms. Culler wrote that when she and her husband arrived at Plaintiff's house, Plaintiff asked if they wanted to smoke marijuana.  Ms. Culler also indicated that Plaintiff talked about smoking marijuana at a previous Exterran Christmas party and was smoking marijuana at the February 12, 2011 party.  Ms. Culler then stated the following:

> I asked her in front of many people if she had to take drug tests. She responded in front of at least 30 people how she smokes everyday and when she is called in for her random drug test that she has someone else pee in a tube for her and then puts it in her vagina to keep it warm and she pours it in the cup at the drug test.

Ex. 2 (Doc. No. 47-2) (attached to Motion for Summary Judgment).[4]  Ms. Culler further stated that there were "also many other things that [sic] this party that made [her] very uncomfortable…."  *Id*.  Ms. Culler maintained that she wanted this matter "confidential because with two managers hearing [Plaintiff] brag about this [made Ms. Culler] very uneasy with them knowing and not doing anything about it …."  *Id*.  Cockrell, Plaintiff's immediate supervisor, was present at Plaintiff's party and later testified at his deposition that he did not see Plaintiff smoking marijuana nor did he witness her offering marijuana to anyone.  Sebree also testified at a deposition that he did not observe any marijuana use at Plaintiff's party nor did he hear Plaintiff discuss marijuana or drug testing.

When Reddy received Ms. Culler's anonymous letter on February 28, 2011, she scanned the letter and emailed it to Stewart. Reddy disclosed to Stewart that Ms. Culler wrote the anonymous letter.  Stewart then emailed the letter to Mary Ivers, Exterran's human resources director for its North American Operations, and spoke with Ivers on the telephone about Ms. Culler's letter.  Stewart informed Ivers that Ms. Culler wrote the anonymous letter.  Ivers

---

[4] Plaintiff asserts that only 17 people attended her February 12, 2011 party.  *See* Answer to Interrogatory No. 14 (Doc. No. 50-16).

decided that day that Plaintiff should submit to a drug test.  Ivers explained at her deposition that if there is an allegation of an employee falsifying a drug test, Exterran follows its policy of mandating that employee undergo a drug test.

On March 2, 2011, Ingersoll, Stewart, and Ivers met to discuss the anonymous letter and mandating Plaintiff to submit to a reasonable cause or suspicion drug test.  Ingersoll testified at his deposition that he and Stewart found that the anonymous letter was credible because the writer, the spouse of an employee present at Plaintiff's party, specifically described the drug test tampering. Ingersoll also testified at his deposition, contrary to Ivers' deposition testimony, that he and Stewart decided at the March 2, 2011 meeting that Plaintiff should undergo reasonable cause or suspicion drug testing.  Ingersoll, Stewart, and Ivers also discussed that Plaintiff should be placed on suspended leave with pay pending the drug test results. *See* Substance Abuse Policy § 12.0 ("Covered Individuals who are tested under Reasonable Cause or Suspicion and/or post-incident testing may be placed on a leave (with pay) ….").

According to Reddy, at some point the next day, March 3, 2011, Ingersoll and Stewart contacted Ms. Culler via a conference call. Ingersoll, however, testified at his deposition that he did not know who wrote the anonymous letter.  Also on March 3, 2011, Ingersoll called Plaintiff into his office regarding the anonymous letter.  Stewart was present by telephone for this meeting. Plaintiff claims that Ingersoll did not show her the anonymous letter at that meeting nor did she know at the time who wrote it.  Ingersoll did not ask Plaintiff about the information in the letter.  Instead, Plaintiff was told that she had to undergo drug testing that day and that she would be placed on a 10-day leave of suspension with pay pending the outcome of the drug test. Although Plaintiff agreed at the meeting to submit to the drug test, she protested that she was being singled out for drug testing and that "everybody that worked at Exterran" who attended her

party should submit to drug testing.  Deposition of Pamela Ivie (Doc. No. 50-4) at 97:21-98:1.
According to Plaintiff, Stewart explained that Plaintiff was being required to submit to drug
testing because the party was at her house. Ingersoll testified at his deposition that no other
persons at Plaintiff's party were drug tested because nothing in the anonymous letter indicated
that anyone else should be tested.

Ingersoll drove Plaintiff to a drug testing facility while Remley, Plaintiff's manager,
drove Plaintiff's vehicle to the drug testing facility.  Apparently, both Ingersoll and Remley
waited in the lobby of that facility while Plaintiff gave urine and hair samples.  After Plaintiff
gave the urine and hair samples, Ingersoll and Remley departed from the facility together and
Plaintiff was left with her vehicle.  Before leaving in her vehicle, Plaintiff called a friend who
was an Exterran district manager to discuss the propriety of the drug test.  Plaintiff then went
back inside the drug testing facility and "withdrew" her urine and hair samples.  *See* Declaration
of Pamela Ivie (Doc. No. 50-15) at ¶5.  Later that day, Ivers was informed that Plaintiff refused
to submit to the drug test.  Consequently, Ivers decided to terminate Plaintiff's employment
because Plaintiff refused to submit to a drug test in violation of the Substance Abuse Policy.

After Exterran terminated Plaintiff's employment, Exterran conducted an investigation
into employee conduct at Plaintiff's party.  This investigation was based on Ms. Culler's letter
which stated that other matters at the party made her feel uncomfortable.  The investigation
consisted of interviews of Exterran employees who had attended the party as well as employees
who did not attend the party.  Findings from the investigation included that employees were
drinking heavily and engaging in inappropriate sexual conduct.  These actions violate Exterran's
code of conduct.  Consequently, Exterran issued disciplinary correction memos to Cockrell and

another employee for sexual misconduct, verbally counseled other employees, and demoted

Sebree and another employee.

*b. Other Evidence Concerning Plaintiff's Claims*

When Exterran hired Plaintiff in 2008, Plaintiff signed an ACKNOWLEDGEMENT

AND RELEASE FOR EMPLOYEE/APPLICANT in which she acknowledged receiving the

Substance Abuse Policy. *See* Ex. 7 (Doc. No. 47-7). Besides indicating that she was aware that

Exterran conducts drug testing based on reasonable cause or suspicion, Plaintiff consented to

drug testing to determine if she is in violation of the Substance Abuse Policy. *Id.* at 1. Moreover,

Plaintiff acknowledged that violation of the Substance Abuse Policy "may result" in "immediate

termination of … employment with the Company." *Id.* Plaintiff understood that if she refused to

submit to a drug test, Exterran could terminate her employment. Ex 1 (Doc. No. 47-1),

VIDEOTAPED DEPOSITION OF PAMELA IVIE at 67:25-68:4.

Additionally, Plaintiff did not know of anyone, male or female, at Exterran who was

reported to have tampered with a drug test and was not required to submit to a reasonable cause

or suspicion drug test. *Id.* at 158:6-9. Plaintiff also did not know of any Exterran employee, male

or female, who refused to take a drug test and was not terminated from employment. *Id.* at 158:2-

5. Since 2005, Exterran has terminated only male employees for violating the Substance Abuse

Policy. *See* Ex. 9 (Doc. No. 47-9), RESPONSES TO PLAINTIFF PAMELA IVIE'S FIRST

SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS,

AND REQUESTS FOR ADMISSIONS TO DEFENDANT EXTERRAN ENERGY

SOLUTIONS, L.P.

A document from the New Mexico Department of Workforce Solutions, dated March 29, 2011, states that Exterran failed to show that its request that Plaintiff undergo a drug test "was in line with" Exterran's policies.  Doc. No. 50-18.

At the time Exterran hired Plaintiff in 2008, she also signed an ACKNOWLEDGEMENT OF U.S. EMPLOYEE HANDBOOK.  *See* Ex. 10 (Doc. No. 47-10.  Both the ACKNOWLEDGEMENT OF U.S. EMPLOYEE HANDBOOK and the U.S. EMPLOYEE HANDBOOK itself clearly describe the employment relationship as at-will.  *See also* Ex. 11 (Doc. No. 47-11) at 2.  These documents explicitly indicate that the U.S. EMPLOYEE HANDBOOK does not constitute an employment contract.  Moreover, Substance Abuse Policy § 21.0 explicitly states that Exterran employees are at-will and that the Substance Abuse Policy does not create any kind of contract.

*B.  Summary Judgment Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

---

[1]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

(10th Cir.1996) (citation omitted).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C.  Discussion*

     *1.  The Title VII and NMHRA Claims of Sex Discrimination*

     The Court notes that since Plaintiff's burden is the same under both Title VII and the NMHRA, the Court's analysis of Plaintiff's Title VII claims applies equally to the NMHRA claims. *See Orr v. City of Albuquerque,* 417 F.3d 1144, 1149 n. 5 (10th Cir.2005) (citing *Cates v. Regents of New Mexico Inst. of Mining & Tech.,* 124 N.M. 633, 954 P.2d 65 (1998)).  Hence, the Court's resolution of the summary judgment issues regarding Plaintiff's Title VII claims will necessarily resolve the summary judgment issues concerning the NMHRA claims.

     A plaintiff alleging discrimination under Title VII may prove intentional discrimination through either direct or indirect evidence of discrimination.  *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  In this case, Plaintiff alleges indirect evidence of sex discrimination.  In analyzing circumstantial evidence of discrimination under Title VII, courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.  *Id*.  If the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for its action.  *Id*.  If the employer offers a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the employer's reason is mere pretext and unworthy of belief.  *Id*.

*a. Plaintiff's Prima Facie Case of Sex Discrimination*

To show a *prima facie* case of discrimination under Title VII, plaintiffs must demonstrate

that they are members of a protected class, that they suffered an adverse employment action, and

that the employer treated similarly situated employees differently.  *Trujillo v. University of

Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998).  The parties do not

contest that the female Plaintiff belongs to a protected class.  Defendants, however, argue that

they are entitled to summary judgment on the Title VII and NMHRA sex discrimination claims

because Plaintiff has not provided evidence that she can meet the two last prongs of the *prima

facie* test.

*(1)  Adverse Employment Action*

Defendants argue first that the decision to require Plaintiff to submit to a reasonable

cause or suspicion drug test and the decision to suspend Plaintiff with pay pending the outcome

of the drug test were not adverse employment actions. Defendants, however, seem to concede

that Exterran's termination of Plaintiff's employment was an adverse employment action.

Plaintiff, on the other hand, asserts that the adverse employment action occurred when Plaintiff

had to choose between submitting to an unjustified reasonable cause or suspicion drug test or

having her employment terminated for not submitting to that drug test.  Plaintiff cites to *Barone

v. United Airlines, Inc.*, 355 Fed. Appx. 169 (10th Cir. 2009) (unpublished decision) to support

her position.

Before analyzing the applicability of *Barone* to this case, the Court first addresses

Plaintiff's contention that the reasonable cause or suspicion determination was unjustified and

that Plaintiff should, therefore, not have been mandated to undergo reasonable cause or suspicion

drug testing.  Although the definition of reasonable cause or suspicion in the context of drug test

tampering requires a belief "based on specific objective and articulable facts and reasonable inferences drawn from those facts, in light of experience" that drug test tampering occurred, the Substance Abuse Policy does not require that the two supervisors/managers making the reasonable cause or suspicion determination actually observe any behaviors by the employee. *See* Ex. 6 (Doc. No. 47-6), Substance Abuse Policy § 6.0. at 4.  Moreover, there is no requirement in the Substance Abuse Policy that Exterran's management conduct an investigation before ordering a reasonable cause or suspicion drug test nor does the Substance Abuse Policy forbid Exterran's management from relying on a letter (whether anonymous or not) in deciding that there is "specific objective and articulable facts and reasonable inferences drawn from those facts, in light of experience" of drug tampering.

Furthermore, Ms. Culler's letter contains specific, articulable, and, arguably, objective statements by Ms. Culler that she personally witnessed Plaintiff smoking marijuana and discussing how she tampers with drug testing.  In fact, Defendants had no reason to believe that Ms. Culler was not a credible witness.  Interestingly, Plaintiff has not presented any evidence that Ms. Culler had a bad motive or reason to lie about what she observed at Plaintiff's party. Even if Defendants had learned from two male employees that they did not see Plaintiff smoke marijuana or hear her discuss drug test tampering at the party, that does not exclude Plaintiff from having done those things out of sight of those two employees, but in view of Ms. Culler. Ms. Culler's letter alone seems to be enough under the Substance Abuse Policy to establish reasonable cause or suspicion that Plaintiff was tampering with drug tests in violation of the Substance Abuse

Policy.[5] Once Defendants made the reasonable cause or suspicion decision, it is undisputed that

the Substance Abuse Policy allowed Defendants to mandate that Plaintiff submit to a drug test,

which management did.  Viewing the evidence in the light most favorable to Plaintiff, a

reasonable jury could not find that Defendants violated the Substance Abuse Policy when they

made the reasonable cause or suspicion determination and decided to require Plaintiff to undergo

reasonable cause or suspicion drug testing.  The issue then becomes whether the choice between

undergoing a justifiable reasonable cause or suspicion drug test or refusing to undergo that drug

test constitutes an adverse employment action.

        The phrase "adverse employment action" is liberally defined in the Tenth Circuit.

*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (citation omitted).  An adverse

employment action occurs when there is "a significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits."  *Id*. (citation and quotations omitted).  In

*Barone*, the employer gave the employee two options: relocate to another state as a part-time

non-management employee (a demotion) or resign.  The Tenth Circuit Court of Appeals

concluded that whichever option the plaintiff chose would effectively change the plaintiff's

employment status by altering her "'compensation, terms, conditions, [and] privileges of

employment.'"  *Barone v. United Airlines, Inc.*, 355 Fed. Appx. at 181 (quoting 42 U.S.C. §

2000e-2(a)(1)).  Consequently, the ultimatum presented to the plaintiff in *Barone* constituted an

adverse employment action.

---

[5] Plaintiff did provide a letter from the New Mexico Department of Workforce Solutions stating
that it was reasonable for Plaintiff to refuse to submit to the reasonable cause or suspicion drug
testing because it was not "in line" with Exterran's policy.  Doc. No. 50-18.  This letter,
however, carries little weight in proving that Defendants did not follow the Substance Abuse
Policy because it lacks any explanation for its statement and is, therefore, conclusory.

The possible choices leading to termination of employment in this case are distinguishable from what the plaintiff in *Barone* faced. Here, Plaintiff had the choice of undergoing justifiable drug testing or not undergoing justifiable drug testing.  If Plaintiff had undergone the drug testing, whether or not she agreed with the reasonable cause or suspicion decision, Plaintiff's employment status would not have changed because she would have been paid while the test results were pending.  Moreover, if Plaintiff passed the reasonable cause or suspicion drug test, she would have remained in her job.  On the other hand, if Plaintiff failed that drug test, Plaintiff concedes that Exterran could have justifiably terminated her employment for violating the Substance Abuse Policy.  Furthermore, as Plaintiff admits, if she refused to participate in the reasonable cause or suspicion drug test, Exterran could immediately terminate her employment for violating the Substance Abuse Policy. Plaintiff also acknowledges that compliance with the Substance Abuse Policy is a condition of employment.  Unlike the options in *Barone,* which both would have resulted in an immediate adverse employment action*,* one of Plaintiff's options, the option of undergoing a drug test which results in a clean outcome, would have led to no change in employment status.  Also, unlike *Barone* where apparently no written employer policy supported the options the plaintiff faced, termination of employment in this case for either submitting to a justifiable drug test and failing it or refusing to undergo that drug test would have been legitimate under a written employer policy acknowledged by Plaintiff at the time of hiring and considered a condition of employment.  Plaintiff's citation to *Barone* simply does not support Plaintiff's contention that her decision to not submit to the reasonable cause or suspicion drug test was somehow an adverse employment action.

Although Plaintiff has failed to convince the Court that the reasonable cause or suspicion determination was unjustifiable and that *Barone* is applicable to this case, it is clear that

Plaintiff's ensuing termination of employment for refusing to undergo drug testing is an adverse employment action.  For example, in *Carter v. Bowman*, 172 Fed. Appx. 915 (11th Cir. 2006) (unpublished decision), a case where an employer terminated an employee from employment for failure to submit to a drug test,  the Eleventh Circuit Court of Appeals determined that the plaintiff met the second prong of the *McDonell Douglas prima facie* test because "he was subjected to an adverse employment action when he was terminated."  *Id*. at 918.  Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff meets the adverse employment action prong of the *prima facie* test for sex based discrimination under Title VII and the NMHRA.

### *(2)  Similarly Situated Employees*

Defendants also argue that Plaintiff has not shown that Defendants treated her differently than similarly situated employees.  Plaintiff asserts that Defendants treated her differently than the male managers at her party because they were not subject to drug testing like she was, and because Defendants actually investigated the male managers' conduct whereas Defendants relied only on an "anonymous" letter to require Plaintiff to undergo drug testing.  The Tenth Circuit explained in *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) that

> [i]ndividuals are considered "similarly-situated" when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

In this case, Plaintiff has not demonstrated that the male managers at her party dealt with the same supervisor she dealt with.  Moreover, although the male managers may have been subject to the same Substance Abuse Policy as Plaintiff, Plaintiff has not produced evidence that the male managers were necessarily subjected to the same work standards as a non-manager like herself.

15

In addition, Plaintiff failed to demonstrate that the male managers had engaged in the same conduct that Ms. Culler accused Plaintiff of engaging in, i.e., smoking marijuana and tampering with drug tests.  When Ms. Culler mentions in her letter that there "were also many other things that [sic] this party made [her] very uncomfortable,"  Ex. 2 (Doc. No. 47-2), these "other things" presumably did not involve the marijuana smoking and drug test tampering which Ms. Culler had already directly attributed to Plaintiff.  Exterran, in fact, investigated these "other things" and concluded that several male employees engaged in sexual misconduct and alcohol intoxication, not marijuana smoking or drug test tampering.  Exterran subsequently disciplined those male employees.  Additionally, had these male managers been asked to submit to drug testing, there is no indication that they would have refused to do so like Plaintiff did.  These undisputed facts support the determination that Plaintiff and the male managers at her party did not engage "in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." In sum, even viewing the facts in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate that a reasonable jury could find that she has carried her burden of showing a *prima facie* case of sex discrimination under Title VII and the NMHRA.

> b. *Defendants' Legitimate, Nondiscriminatory Reason for Terminating Plaintiff's Employment*

Assuming Plaintiff could demonstrate a *prima facie* case of sex discrimination, the burden then shifts to Defendants to provide a legitimate, non-discriminatory reason for the adverse employment action, i.e., the termination of Plaintiff's employment.  "Establishing a legitimate, nondiscriminatory reason is a burden of production and 'can involve no credibility assessment.'" *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) (quotation omitted).  Defendants contend that they meet this burden of production because they

have provided evidence that they followed the Substance Abuse Policy in terminating Plaintiff's employment for Plaintiff's failure to comply with a reasonable cause or suspicion drug test.

As discussed above, a reasonable jury could find that Ms. Culler's letter provided reasonable cause or suspicion under the Substance Abuse Policy that Plaintiff had tampered with drug tests.  It is undisputed that the Substance Abuse Policy states that a determination of reasonable cause or suspicion by at least two supervisors/managers, as in this case, provides a sufficient basis for mandating an employee to submit to a drug test.  It is also undisputed that the Substance Abuse Policy permits Defendants to terminate Plaintiff's employment for failure to follow through on the reasonable cause or suspicion drug test.  Furthermore, Plaintiff knew at the time that she refused to submit to the reasonable cause or suspicion drug test that Defendants could terminate her employment for failing to comply with the Substance Abuse Policy.  In sum, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants adhered to the Substance Abuse Policy in coming to their ultimate decision to terminate Plaintiff from her employment.  Consequently, Defendants have succeeded in producing sufficient evidence that they had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

*c. Pretext*

Finally, assuming, for the sake of argument, that Plaintiff has presented evidence of a *prima facie* case of sex discrimination and that Defendants have shown that they legitimately and without discriminatory intent terminated Plaintiff's employment for violating the Substance Abuse Policy, Plaintiff's sex discrimination claims can only survive if Plaintiff demonstrates that Defendants' reason for terminating her employment was pretextual.  "At the pretext step, a plaintiff can withstand summary judgment by presenting evidence sufficient to call into question

the truthfulness of the employer's reasons for the adverse action." *Doyle v. Nordam Group, Inc.*, 492 Fed.Appx. 846, 850 (10th Cir. 2012) (unpublished decision) (citing *Reeves,* 530 U.S. at 147–49).  Plaintiff argues that the fact that Defendants investigated the male managers' behavior at Plaintiff's party, but did not investigate Ms. Culler's allegations in her letter demonstrates pretext by Defendants.  As discussed above, the male managers' situation was not like the Plaintiff's situation because there were no allegations of drug use or drug test tampering by the male managers.  Moreover, as Defendants note in their Reply at 7, having Plaintiff submit to a drug test was, in fact, an investigation of Ms. Culler's allegations and would verify whether Plaintiff was smoking marijuana and possibly tampering with the drug tests.  A reasonable jury viewing the evidence in the light most favorable to Plaintiff could not find that the investigation of the male managers' behavior at Plaintiff's party was indicative of pretext by Defendants in their motivation for termination of Plaintiff's employment.

Furthermore, it is important to note that Plaintiff did not know of anyone, male or female, at Exterran who was reported to have tampered with a drug test and was not required to submit to a reasonable cause or suspicion drug test.  Plaintiff also admits that she did not know of anyone, male or female, who refused a drug test and was not terminated from employment.  In addition, Plaintiff was aware that Exterran could terminate her employment if she did not participate in the drug testing.  Moreover, in the past five years, with the exception of Plaintiff, Exterran has terminated only males from employment for violating the Substance Abuse Policy.  It is also significant that Defendants did not request that the two female non-manager employees who were at Plaintiff's party submit to drug testing. This is consistent with Ingersoll's assertion that Exterran management required only Plaintiff to submit to drug testing because Ms. Culler alleged that only Plaintiff was smoking marijuana and discussing drug test tampering. Finally,

Defendants acted pursuant to the Substance Abuse Policy.  Plaintiff has failed to demonstrate that a reasonable jury viewing the evidence in the light most favorable to Plaintiff could find that Defendants' reason for terminating Plaintiff's employment, i.e., Plaintiff's failure to participate in a reasonable cause or suspicion drug test, was somehow untruthful and motivated by discriminatory intent.  Hence, a reasonable jury could not find that Plaintiff carried her burden of demonstrating that Defendants' reason for terminating Plaintiff's employment was pretextual in nature.  For all of the above reasons, Defendants are entitled to summary judgment on Plaintiff's Title VII and NMHRA claims of sex discrimination.

　　　　*2. The Title VII and NMHRA Claims of Retaliation*

　　　　The Court notes that Plaintiff has failed to respond to Exterran and Stewart's arguments[6] that they are entitled to summary judgment on Plaintiff's retaliation claims brought under Title VII and the NMHRA.  Under D.N.M. LR-Cv 7.1(a), "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  Moreover, by failing to respond to the retaliation arguments, Plaintiff is deemed to have abandoned her retaliation claims.  *See, e.g., Steadman v. Calhoun County Bd. of Educ.*, 212 Fed. Appx. 920, 921 (11th Cir. 2006) (unpublished decision) (plaintiff abandoned claims by failing to respond to summary judgment arguments); *Scotwood Industries, Inc. v. Frank Miller & Sons,  Inc.*, 435 F.Supp.2d 1160, 1171 (D. Kan. 2006) (same) (citing *Hinsdale v. City of Liberal*, 2001 WL 980781 at *16-17 (10th Cir.)); *Burfield v. Babbitt*, 272 F.Supp.2d 1233, 1240 (D.N.M. 2001) (same).  Plaintiff's failure to respond to Exterran and Stewart's arguments in support of summary judgment on the retaliation claims is alone a sufficient basis

---

[6] The Court assumes that Stewart would join in Exterran's arguments regarding the retaliation claims.

for granting summary judgment on those claims.  Even so, in the interests of justice, the Court

will also consider the merits of the retaliation claims.

To begin with, Plaintiff has seemingly failed to carry her burden under Rule 56(e) "to

properly address another party's assertion of fact as required by Rule 56(c) …."  Nonetheless,

Rule 56(e) gives the Court several options to resolve issues which have not been addressed by a

non-movant in a summary judgment context.  The most relevant option allows the Court to grant

"summary judgment if the motion and supporting materials—including the facts considered

undisputed—show that the movant is entitled to it…."  Rule 56(e)(3).  The Court will, therefore,

analyze whether Exterran and Stewart are entitled to summary judgment on Plaintiff's retaliation

claims.

Plaintiff contends in the Second Amended Complaint that Exterran and Stewart

terminated her employment on the basis of her sex shortly after she complained to Stewart that

the reasonable cause or suspicion drug testing was "unfair and unreasonable."  Second Amended

Complaint at ¶¶ 40-42, 49-51.  Title VII prohibits an employer from discriminating against an

employee who "has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in

an investigation . . . under this subchapter."  42 U.S.C. §2000e-3(a).  In analyzing Title VII

retaliation claims, courts apply the burden-shifting approach set forth in *McDonnell Douglas*:

once the plaintiff makes a *prima facie* showing of retaliation, the defendant must articulate a

legitimate, nondiscriminatory reason for the adverse employment action, then, the plaintiff must

show that the defendant's reasons for the adverse employment action are pretextual.  *See O'Neal

v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).

Exterran and Stewart concede that Plaintiff might be able to show a *prima facie* case of retaliation. However, as with the sex discrimination claims, Exterran and Stewart have proffered a legitimate, nondiscriminatory reason for termination of Plaintiff's employment, i.e., Plaintiff failed to complete the reasonable cause or suspicion drug test in violation of the Substance Abuse Policy. Furthermore, like the sex discrimination claims, Plaintiff has failed to demonstrate that Exterran and Stewart's proffered reason for the termination of Plaintiff's employment was pretextual. Even considering the facts in the light most favorable to Plaintiff, a reasonable jury could not find that Plaintiff has presented sufficient evidence to establish retaliation by Exterran and Stewart. Consequently, the Title VII and NMHRA retaliation claims against Exterran and Stewart are subject to summary judgment.

### 3. The Breach of Contract Claims

Since the Court has decided to grant summary judgment on Plaintiff's federal Title VII claims as well as on the corresponding NMHRA claims, the Court must decide if it should continue to exercise supplemental jurisdiction over the remaining state breach of contract claims. According to 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. *See Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998). Where federal question jurisdiction has been asserted, as in this case, and all of the federal claims are dismissed before trial, the courts have discretion to remand the remaining state claims to state court. *See Woods v. Wal-Mart*, 124 F.3d 219, *3 (10th Cir. 1997) (unpublished decision); *Garcia v. Casaus*, 2011 WL 7444745 *58-59 (D.N.M.) (unpublished decision). Because Plaintiff's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over the

remaining state breach of contract claims, and those claims will, therefore, be remanded to state court.

>    *4.  Defendants' Request for an Award of Attorneys' Fees and Costs*

Defendants' request for an award of attorneys' fees and costs in the Motion for Summary Judgment does not comply with D.N.M. LR-Cv 54.5.  Local Rule 54.5(a) requires that

> a motion for attorney's fees not brought pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) must be filed and served within thirty (30) days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees. Movant must submit a supporting brief and evidence (affidavits and time records).  The motion must comply with D.N.M. LR-Cv 7.

Local Rule 54.5(b) also mandates that attorneys "must keep concurrent time records … where there is a potential for an award of attorney fees."  Hence, the Court will deny Defendants' request for attorneys' fees and costs without prejudice to Defendants filing an appropriate motion under Local Rule 54.5.

>    *5.  The MOTION TO VACATE TRIAL SETTING*

In light of the Court's decision to grant summary judgment on the Title VII and NMHRA claims and to remand the remaining state breach of contract claims, the MOTION TO VACATE TRIAL SETTING is now moot and will be denied as moot.

*D.  Conclusion*

Since Plaintiff agrees to dismiss her claims against Cockrell and Remley, the Court will dismiss those claims with prejudice.  The Court will also enter summary judgment in favor of Defendants with respect to the Title VII and NMHRA claims.  The Court, however, declines to exercise supplemental jurisdiction over the state breach of contract claims and those claims will be remanded to state court.  Additionally, the Court will deny Defendants' request for an award of attorneys' fees and costs without prejudice to Defendants filing an appropriate motion which

complies with Local Rule 54.5.  Finally, the MOTION TO VACATE TRIAL SETTING will be denied as moot.

IT IS ORDERED that:

1.  Plaintiff's claims against Cockrell and Remley will be dismissed with prejudice;

2.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 47) is granted in that the Court will grant summary judgment in favor of Defendants on Counts I, II, III, and IV of the Second Amended Complaint;

3.  the Court will remand Count V of the Second Amended Complaint to the Eleventh Judicial District Court, County of San Juan, State of New Mexico;

4.  the Court denies Defendants' request for an award of attorneys' fees and costs without prejudice to Defendants filing an appropriate motion under Local Rule 54.5; and

5.  the MOTION TO VACATE TRIAL SETTING (Doc. No. 51) is denied as moot.


_____
SENIOR UNITED STATES DISTRICT COURT JUDGE